## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **FARRAN S. CAMPBELL,** | : | **MOTION TO VACATE** |
| **Movant,** | : | **28 U.S.C. § 2255** |
| | : | |
| **v.** | : | **CRIMINAL INDICTMENT NO.** |
| | : | **1:17-CR-0145-ELR-AJB-1** |
| **UNITED STATES,** | : | |
| **Respondent.** | : | **CIVIL FILE NO.** |
| | : | **1:19-CV-0015-ELR-AJB** |

## UNITED STATES MAGISTRATE JUDGE'S
## <u>FINAL REPORT AND RECOMMENDATION</u>

Movant has filed a 28 U.S.C. § 2255 motion to vacate, set aside, or correct his federal sentence entered under the above criminal docket number. The matter is before the Court on the § 2255 motion [Doc. 12], Respondent's response, [Doc. 15], and Movant's reply, [Doc. 21]. For the reasons discussed below, Movant's motion to vacate and a certificate of appealability are due to be denied.

### I.    Background

In September 2016, the Grand Jury for the Northern District of Georgia charged Movant with stealing a U.S. Treasury check for $307,589.00, made payable to Duncan Nationwide, Inc. Indictment, *United States v. Campbell*, No. 1:16-cr-0345-ELR-AJB-1 (N.D. Ga. Mar. 26, 2018). On May 8, 2017, in the criminal action

that is the subject of these proceedings, Movant was charged by criminal information with conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1343, and with aggravated identify theft, in violation of 18 U.S.C. § 1028A(a)(1) and (2).  (Criminal Info., ECF No. 1.)  On that same day, Movant entered into a guilty plea, in which he pleaded guilty to both counts and in which the government agreed to dismiss the indictment in 1:16-cr-0345.   (Guilty Plea and Plea Agreement, ECF No. 3-1.) Movant received a twenty-seven month term of imprisonment for the wire-fraud conviction and a consecutive twenty-four month term for the identity-theft conviction. (Tr. for Sentencing at 44-45, ECF No. 18-3.)

Movant now brings this § 2255 motion and argues that his counsel was in ineffective (1) in regard to the use of the $307,589.00[1] check from the dismissed charge to determine the loss amount at sentencing and (2) for not challenging the nexus to interstate commerce.  (Mov't Mem. at 2-7, ECF No. 12-1.)

---

[1] In his motion to vacate, Movant refers to a $376,000.00 check.  (Mov't Mem. at 3, ECF No. 12-1.)  Respondent states that the check was for $307,589.00.  (Resp't Resp. at 4, 6 n.4, ECF No. 15.)  In reply, Movant also states that the check was for $307,589.00.  (Mov't Reply at 2, ECF No. 21.)

II.     **28 U.S.C. § 2255 Standard**

Section 2255 of Title 28 allows a district court to vacate, set aside, or correct a federal sentence that was imposed in violation of the Constitution or laws of the United States or was imposed by a court without jurisdiction, exceeds the maximum sentence authorized by law, or is otherwise subject to collateral attack. 28 U.S.C. § 2255.  The § 2255 movant bears the burden to establish his right to collateral relief, *Rivers v. United States*, 777 F.3d 1306, 1316 (11th Cir. 2015), which is limited.

"Once [a] defendant's chance to appeal has been waived or exhausted, . . . we are entitled to presume he stands fairly and finally convicted," and "to obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 164, 166 (1982). Section 2255 relief "is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice." *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (quoting *Richards v. United States*, 837 F.2d 965, 966 (11th Cir. 1988)) (internal quotation marks omitted).  A constitutional claim of ineffective assistance of counsel, which generally cannot be

fully litigated on direct appeal, is properly raised on collateral review in order to allow for adequate development and presentation of relevant facts. *Massaro v. United States*, 538 U.S. 500, 505-09 (2003).

"The district court is not required to grant a petitioner an evidentiary hearing if the § 2255 motion 'and the files and records of the case conclusively show that the prisoner is entitled to no relief.' " *Rosin v. United States*, 786 F.3d 873, 877 (11th Cir. 2015) (quoting § 2255(b)).  That is the case here, as shown in the discussion below.

## III.   Discussion

### A.   Ineffective Assistance on Loss Amount

As stated above, Movant, in the criminal action that is the subject of these § 2255 proceedings, pleaded guilty to conspiracy to commit wire fraud and aggravated identify theft, and the government agreed to dismiss the charge for stealing a $307,589.00 U.S. Treasury check (case number 1:16-cr-0345-ELR-AJB-1).  *See supra* I.  The parties agreed that the wire-fraud count was subject to a maximum five-year term of imprisonment, that the identity-theft count was subject to a two-year mandatory minimum term of imprisonment, and that the loss amount resulting from Movant's offenses of conviction and all relevant conduct was more

4

than $150,000 but less than $1,500,000.  (Guilty Plea and Plea Agreement ¶¶ 7, 12, 15.)  At the conclusion of the plea hearing, Movant stated that he was aware that the government at sentencing might present the check as relevant conduct and that he might contest the matter.  (Tr. for Guilty Plea at 29, ECF No. 18-4.)

The PSR included in the loss amount the $307,589.00 check and calculated a twelve-level increase under U.S.S.G. § 2B1.1(b)(1)(g).  (PSR ¶¶ 34, 41.)  Movant objected.  (*Id*. ¶ 41.)  In a pre-sentencing memorandum, the government argued that the $307,589.00 check was relevant conduct that should be included in the loss amount.  Sentencing Mem. by USA at 1-4, *Campbell*, No. 1:16-cr-0345-ELR-AJB-1, ECF No. 42.[2]  Movant argued that the loss amount should not include the check (or if it was included, he should receive a downward variance).  Sentencing Mem. by at 1 , *Campbell*, No. 1:16-cr-0345-ELR-AJB-1, ECF No. 43.

 At sentencing, in regard to the loss-amount objection, counsel (1) stated that the difference between arguing for a lower offense level versus a departure was six and one-half dozen and that he would take the position of asking for a downward

---

[2] The sentencing memoranda for Movant's convictions that are the subject of these proceedings (1:17-cr-0145) were, for some reason, filed in *Campbell*, No. 1:16-cr-0345-ELR-AJB-1.

departure and (2) argued that Movant had merely taken the check which appeared to be a real check and that there was no loss based on the check as the bank had not honored it.  (*Id*. at 10, 12, 15.)  The government, among other things, argued that Movant knew the check was not legitimate and had intended the loss of $307,589.00 and that his actions in regard to the check involved a *modus operandi* "not really different than" the one in this case.  (*Id*. at 16-17.)

The Court found that fifteen days after the check was issued to Duncan Nationwide, it was in Movant's hand and he was "taking it down to cash it and incorporating a business in that same name, Duncan Nationwide . . . ." and that Movant at a minimum was guilty of deliberate ignorance on whether it was a validly issued check.  (*Id*. at 21.)  The Court overruled Movant's objection in regard to using the check for determining loss amount and found that Movant's offense level was seventeen, with a guidelines range of twenty-seven to thirty-three months, and that Movant was subject to a consecutive twenty-four months on his identity-theft conviction.  (*Id*. at 22, 29).  Movant argued for a downward departure -- twenty-four months of imprisonment for the identity-theft conviction and a consecutive six to twelve months of house arrest for the wire-fraud conviction.  (*Id*. at 40.)  The Court imposed a twenty-seven month term of imprisonment on the wire-fraud conviction,

followed by a consecutive twenty-four month mandatory term for the identity-theft conviction.  (*Id*. at 44-45.)

In his first ground for collateral relief, Movant asserts that sentencing counsel performed ineffectively because Movant's guidelines sentence was raised substantially when Movant's attempt to cash the $307,589.00 check was categorized as relevant conduct in determining the loss amount, which impermissibly punished Movant for dismissed conduct on which he was never convicted.  (Mov't Mem. at 2-6.)  Movant relies on *Nelson v. Colorado*, _ U.S. _, 137 S. Ct. 1249 (2017), which he contends effectively overrules *United States v. Watts*, 519 U.S. 148 (1997).  (Mov't Mem. at 3.)

Respondent argues that counsel was not ineffective because counsel, in fact, objected to the use of the check.  (Resp't Resp. at 7.)  Movant replies that counsel merely asked the Court for a downward departure, which Movant asserts is different than objecting to the inclusion of the check on the loss amount.  (Mov't Reply at 1-2.)  Movant contends that a proper objection would have included counsel presenting an argument based on *Nelson* instead of "reluctenly [sic] accepting the inclusion of the acquitted [or uncharged] conduct."  (*Id*. at 2.)

A criminal defendant possesses a Sixth Amendment right to "reasonably effective" legal assistance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To show constitutionally ineffective assistance of counsel, a petitioner must establish that (1) counsel's representation was deficient and (2) counsel's deficient representation prejudiced him. *Id.* at 690-92. The Court may resolve an ineffective assistance claim based on either of the above prongs. *Pooler v. Sec'y, Fla. Dep't of Corr.*, 702 F.3d 1252, 1269 (11th Cir. 2012).

Under the first prong, a petitioner must show that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Under the second prong, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*, at 694. The habeas petitioner has the burden of affirmatively proving prejudice, and a "conceivable effect" on the proceedings does not show prejudice. *Wood v. Allen*, 542 F.3d 1281, 1309 (11th Cir. 2008) (quoting *Strickland*, 466 U.S. at 693) (internal quotation marks omitted).

When imposing sentence, it is appropriate for courts to consider fully a defendant's life and character, including past criminal behavior on which he was never convicted – this well-established practice is reflected in the guidelines, which allow a sentencing court to consider relevant conduct. *Watts*, 519 U.S. at 152. Accordingly, the sentencing court may consider conduct underlying an acquitted charge, as long as the conduct is proved by a preponderance of the evidence. *Watts*, 519 U.S. at 156.

> As the Supreme Court explained in [*Watts*], "sentencing enhancements do not punish a defendant for crimes of which he was not convicted, but rather increase his sentence because of the manner in which he committed the crime of conviction."  "[C]onsideration of information about the defendant's character and conduct at sentencing does not result in 'punishment' for any offense other than the one of which the defendant was convicted."

*United States v. Faust*, 456 F.3d 1342, 1347 (11th Cir. 2006).

In *Nelson*, the case relied on by Movant, the United States Supreme Court held that defendants -- who had been acquitted of all charges or whose convictions had been reversed and/or vacated – should be presumed innocent and that the state violated due process when they required such defendants to further prove their innocence by clear and convincing evidence to obtain refunds on fees, costs, and

9

restitution imposed based on invalidated convictions. *Nelson*, _ U.S. at _, 137 S. Ct. at 1256-58.

Movant fails to show that counsel was ineffective. First, counsel *did* object to using the dismissed charge as relevant conduct in calculating the loss amount, and, although at sentencing counsel pursued the argument as an argument for a downward departure, the Court overruled the objection.

Additionally, Movant fails to show that there is a reasonable probability that the result would have been any different if sentencing counsel unambiguously had pursued an objection to the offense level for loss amount, based on *Nelson*. *Nelson* is inapplicable. *Nelson* addressed reimbursement of monetary penalties/costs exacted against defendants based on convictions that had been rendered invalid. Even if *Nelson* covered non-monetary penalties, Movant does not show that he is being punished or penalized for any conduct on which he has not been convicted. Movant's twenty-seven month sentence was imposed for his wire-fraud conviction and is well within the five-year statutory term for wire fraud, to which Movant agreed he was subject. Although the court considers relevant conduct and a defendant's history in imposing a penalty for the crime of conviction, the sentence is nonetheless imposed *for the crime of conviction*; it is *not* imposed for the relevant conduct. *See*

10

*Faust*, 456 F.3d at 1347; *see also Hunter v. United States*, CR 116-045, 2019 WL 1063394, at *11 (S.D. Ga. Feb. 8, 2019) (rejecting *Nelson* based claim that a defendant is presumed innocent of relevant conduct and that relevant conduct cannot be used at sentencing absent a conviction for such conduct), *report and recommendation adopted*, CR 116-045, 2019 WL 1061665 (S.D. Ga. Mar. 6, 2019); *Benton v. United States*, 9:18-CV-68, 2018 WL 3043310, at *2 (E.D. Tex. May 8, 2018) ("Movant contends the Supreme Court's holding in *Nelson* prevents the sentencing court from considering relevant conduct in assessing punishment.  This claim lacks merit because *Nelson* does not address the use of relevant conduct in sentencing.  It is well-established that the district court may consider any information which has sufficient indicia of reliability."), *report and recommendation adopted*, 9:18-CV-68, 2018 WL 3035777 (E.D. Tex. June 19, 2018).

Accordingly, ground one fails.

**B.    Ineffective Assistance on Interstate Nexus**

In pleading guilty, Movant agreed that he was in fact guilty of wire fraud and aggravated identity theft as charged and that by pleading guilty he was giving up the right to be tried by a jury and to have the government prove his guilt beyond a reasonable doubt.  (Guilty Plea and Plea Agreement ¶¶ 1, 2.)  At the plea hearing, the

11

Court asked the government to summarize the factual basis for the charges against Movant and told Movant to listen closely as he would be asked whether or not he agreed.  (Tr. for guilty plea at 25.)  Counsel for the government, among other things, stated --

> Your honor, if this case were to proceed to trial, the United States would prove by lawful and competent evidence that, on or about June 4th, 2014, [Movant] electronically transmitted in interstate commerce a credit application to a company called Nextgear Capital, Incorporated.  The application was called a floor plan line of credit in the name of an entity called Campbell's Cars, LLC, which is an entity that's associated with [Movant].  [Movant] listed an individual with the name Oscar Chaney as the organizer and principal of Campbell's Cars in the application to Nextgear.  And he signed Oscar Chaney's name to the papers he submitted electronically as part of the application package.
>
>        . . .
>
>        Campbell knew that Chaney was a real person and knew that he did not have Chaney's permission to use his name.  As part of that application package, on or about June 4th, 2014, [Movant] submitted to Nextgear an electronic image of a counterfeit United States passport in the name of Oscar Chaney.

(Tr. for Guilty Plea at 25-26.)  The Court stated to Movant, "you have heard the factual basis presented just now by the government.  Is there any portion of that factual basis with which you disagree?  (*Id.* at 27.)  Movant stated, "No. No." (*Id.*)

12

Movant then pleaded guilty, and the Court found that his plea was supported by a factual basis.  (*Id*.)

Movant argues in his second ground for collateral relief that his counsel was ineffective for not challenging the nexus to interstate commerce, that the government failed to establish the use of interstate wires, and that his wire-fraud conviction should be reversed and vacated.  (Mov't Mem. at 6-7.)

Respondent argues that counsel was not ineffective because the record amply demonstrates an interstate connection.  (Resp't Resp. at 7-9).

Movant replies that that there was no evidence or testimony about the location of the recipient internet servers and that use of the internet alone is insufficient to show interstate commerce nexus.  (Mov't Reply at 3-4.)

A defendant who pleads guilty waives the right to challenge the sufficiency of the evidence on an interstate nexus element.  *United States v. Ternus*, 598 F.3d 1251, 1254 (11th Cir. 2010) (holding that challenge to foreign commerce element in 18 U.S.C. § 2314, transportation of stolen goods, was waived by guilty plea); *United States v. Viscome*, 144 F.3d 1365, 1370 (11th Cir. 1998) ("Appellant Viscome also attacks the sufficiency of the government's evidence regarding the interstate nexus element.  However, Viscome's guilty plea waived all non-jurisdictional defects in the

13

proceedings against him; and Viscome's sufficiency of the evidence challenge is non-jurisdictional."); *see also United States v. Grimon*, _ F.3d _, _, No. 17-15011, 2019 WL 2079419, at *4 (11th Cir. May 13, 2019) (discussing interstate commerce elements in criminal statutes such as 18 U.S.C. § 1029 (governing fraud in connection with access devices) and stating, "[w]hether . . . [the] factual proffer sufficiently demonstrated[] an interstate nexus is merely a non-jurisdictional challenge to the sufficiency of the evidence as to that element of the offense . . . .").

Movant does not challenge the validity of the guilty plea,[3] but simply asserts that the government did not prove wire fraud, counsel did not object, and his conviction should be vacated. Movant, however, pleaded guilty to wire fraud and gave up the right to have the government prove wire fraud beyond a reasonable doubt. Even if proof at trial might have required more than showing a mere use of the

---

[3] There is no indication that, had counsel performed differently, Movant would have rejected the plea offer (including the agreement to dismiss the check charge) and would have proceeded to trial. *See Lynch v. Sec'y, Fla. Dep't of Corr.*, 776 F.3d 1209, 1218, 1229 (11th Cir. 2015) (stating that to succeed on a claim that a guilty plea was obtained based on ineffective assistance by counsel, a movant must show that "(1) counsel's advice was deficient; and (2) 'but for counsel's errors, [there is a reasonable probability that] he would not have pleaded guilty and would have insisted on going to trial'" (quoting *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985))).

14

internet,[4] Movant's guilty plea alleviated that requirement.  Under oath at his plea

hearing, Movant agreed to the factual basis for the charge of wire fraud – including

---

[4]  A violation of § 1343 requires, *inter alia*, the transmission, by wire (or radio or television), of communication in interstate commerce.  The Eleventh Circuit in an unpublished case has interpreted § 1343 to criminalize the use (even if the use is only local) of a telecommunications network – a channel of interstate commerce.  *United States v. Jasen*, 693 Fed. Appx. 801, 803 (11ᵗʰ Cir. May 19, 2017).

The Court notes, however, that there appears to be some distinction between whether or not internet use demonstrates an interstate nexus depending on whether the statute at issue (1) criminalizes the use of a channel or instrumentality of interstate commerce for certain purposes or (2) criminalizes an actual transmission of certain material in interstate commerce.  The internet is considered an " 'instrument of interstate commerce' " for purposes of whether an enterprise has "engaged in interstate commerce" under the Racketeering Influenced Corrupt Organizations Act (RICO).  *United States v. Pipkins*, 378 F.3d 1281, 1295 (11ᵗʰ Cir. 2004) (quoting *United States v. Panfil*, 338 F.3d 1299, 1300 (11ᵗʰ Cir. 2003)), *cert. granted, judgment vacated on other grounds*, 544 U.S. 902 (2005), *and opinion reinstated*, 412 F.3d 1251 (11ᵗʰ Cir. 2005).  The internet also is considered "an instrument of facility of interstate commerce" for purposes of whether a person has used a facility or instrument of interstate commerce.  *United States v. Liton*, 311 Fed. Appx. 300, 301 (11ᵗʰ Cir. Feb. 12, 2009); *see also United States v. Capshaw*, 440 Fed. Appx. 738, 742-43 (11ᵗʰ Cir. Sept. 7, 2011) (stating that, when an element requires the use of a facility of interstate commerce, the element is satisfied by use of such facility, without regard to whether the use was inter- or intra-state in nature); *United States v. Ballinger*, 395 F.3d 1218, 1226 (11ᵗʰ Cir. 2005) ("Congress has repeatedly used this power to reach criminal conduct in which the illegal acts ultimately occur intrastate, when the perpetrator uses the channels or instrumentalities of interstate commerce to facilitate their commission.").  However, when a statute requires that the material/file at issue was " 'transported in interstate commerce . . . by any means, including by computer[,]' " the Eleventh Circuit has stated that it has not decided in a published

Movant's electronic transmission of documents in interstate commerce, which the government stated it could prove by lawful and competent evidence if the case went to trial.  Absent any ineffective-assistance challenge to the guilty plea, Movant fails to show that counsel was ineffective for not objecting.  Movant's second ground is without merit.

## IV.    Certificate of Appealability (COA)

Under Rule 11 of the Rules Governing § 2255 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. . . . If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  The Court will issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The

--------------------------------------------

case whether use of the internet, without more, shows that a file has moved in interstate commerce.  *See United States v. Schaff*, 454 Fed. Appx. 880, 882-83 (11th Cir. Jan. 17, 2012) (quoting 18 U.S.C. § 2252A(a)(2) (2007)).  Some courts have found that it is unclear whether an intrastate internet communication qualifies as a transmission in interstate commerce under § 1343 and that it is not obvious that, the mere use of " 'a mechanism of interstate commerce' " implicates § 1343.  *See Rolle v. Houston*, CV-12-S-3313-NE, 2014 WL 1329568, at *9 (N.D. Ala. Mar. 28, 2014) (quoting *United States v. Philips*, 376 F. Supp. 2d 6, 8 (D. Mass. 2005)).  The matter does not need to be resolved in this case.

16

applicant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Melton v. Sec'y, Fla. Dep't of Corr.*, 778 F.3d 1234, 1236 (11ᵗʰ Cir. 2015) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)) (internal quotation marks omitted).

It is recommended that a COA is unwarranted because it is not debatable that Movant fails to show an entitlement to collateral relief.  If the Court adopts this recommendation and denies a COA, Movant is advised that he "may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22."  Rule 11(a), Rules Governing Section 2255 Proceedings for the United States District Courts.

## V.    Conclusion

For the reasons stated above,

**IT IS RECOMMENDED** that Movant's motion, [Doc. 12], to vacate, set aside, or correct his federal sentence be **DENIED**.

**IT IS FURTHER RECOMMENDED** that a COA be **DENIED**.

The Clerk of Court is **DIRECTED** to withdraw the referral of this § 2255 motion from the assigned Magistrate Judge.

**IT IS SO RECOMMENDED and DIRECTED**, this 17th day of May, 2019.

ALAN J. BAVERMAN
UNITED STATES MAGISTRATE JUDGE